Our first case of the morning, November 19, 2013, is 115-5459, People of the State of Illinois v. Christopher B. Bailey. Ready to proceed? Proceed. Morning, Your Honors. Counsel. May it please the Court, I'm Jamie Montgomery, Assistant Appellate Defender in the Office of the State Appellate Defender. I represent the defendant appellant, Christopher Bailey. In 2007, 17-year-old Christopher entered an open guilty plea to one count of criminal sexual abuse stemming from sexual intercourse with his 16-year-old girlfriend, who was four months shy of her 17th birthday. The Court accepted his plea without informing him of the nature of the offense or the range of penalties available. After hearing brief argument and aggravation and mitigation in which the State asked that the defendant be required to register as a sex offender, the Court told Christopher that there was no sentence as to the sex offender registration and sentenced him to what amounted to time served and some fines. Although the sentence, the written sentence order had a list of preprinted conditions of sentence with boxes for the Court to check if they applied, the box next to register pursuant to the Sex Offender Registration Act was left unchecked. Thus, when Christopher walked out of the courtroom that day in 2007, he had absolutely no reason to believe that he was required to register as a sex offender. Imagine his surprise then when in 2010 he was arrested for the offense of felony failure to register as a sex offender. By that time, the timeline to file a timely post-plea or post-sentencing motion had run and the time to file a collateral attack had run. His attorney, appointed on the failure to register charge, recognizing the predicament Christopher was in, filed a motion to vacate the plea and sentence. The State, perhaps recognizing some of the equities in this case, did not object on timeliness grounds to the motion and instead only argued against the merits of the motion. In so doing, the parties re-vested the trial court with jurisdiction in this case. This Court is vested with. Can you address the procedural issue with respect to the motion to vacate wasn't brought pursuant to 604D, was it? I believe that the motion does, the motion itself does not indicate what it was brought pursuant to. The title of the motion is a motion to vacate a plea, which gets us under the ambit of 604D. There is some language in the motion about it requesting this relief on the grounds of voidness, which could be a motion pursuant to, you know, petition for relief for judgment. But the motion itself did not state what it was being brought pursuant to. So in the interest of pursuing an argument on behalf of my client, I argued in the appellate court that this was a motion brought pursuant to Rule 604D, and the appellate court did not comment on that in its decision. Do you think you backed off a little of that in your reply brief as to whether or not it was brought pursuant to 604D? Is your position now in front of this Court it was or it wasn't? My position has always been that it was. I acknowledge in my reply brief that if this Court were to interpret it as not being brought under 604D, that, yes, my client has cannot, my argument fails in that we can't, there's no remedy here, it can't be sent back for 604D admonitions if it wasn't brought under 604D. Okay. Thank you. This Court is vested with the power to create jurisdictional rules, and with that power comes the power to create exceptions. Thirty years ago in People v. Kading, this Court extended the revestment doctrine to criminal cases, thereby wisely recognizing that sometimes situations arise which, in the interest of justice, otherwise final criminal judgments may be revisited. In Kading, this Court explicitly stated that the revestment doctrine permits litigants to revest a court which has general jurisdiction over the matter with both personal and subject matter jurisdiction over the particular cause after the 30-day timelines have run. For the doctrine to apply, the Kading Court stated that the parties must actively participate without objection in proceedings which are inconsistent with the merits of the prior judgment. The meaning of that phrase is at issue here. Until the Second District's decision in this case, the weight of Illinois authority consistent with Kading held that the opposing parties' participation in hearings without objecting to timeliness, along with arguments directed against the merits of the untimely motion, was sufficient for revestment to apply. Now, surely there are times, such as in Bannister, where both parties, for whatever reason, are seeking to vacate a final order. However, the rule in Kading does not require the parties to agree, nor does it require that they both take positions which are inconsistent with the final judgment. It requires only that the parties participate without objection in proceedings which are inconsistent with the merits. The majority of appellate court decisions have found that actively participating in a hearing on a motion directed against a judgment is sufficient because such participation is tacit acknowledgment that the court may revisit that, the prior order. If the opposing party wants to prevent the revisiting of the prior judgment, all it need do is object on timeliness grounds. This is not a heavy burden. Indeed, here, had the State objected in the trial court, rather than waiting until the appellate court to object on timeliness grounds, we would not even be here, as the State's objection would have entirely stopped the defendant from arguing revestment in the appellate court. Would your argument mean that in every case they would have to argue on timeliness or else there would be revestment? Correct. I believe that's what Kading says. The appellate court's holding here that the parties must agree that the prior judgment should be altered in order for the revestment doctrine to apply leaves litigants who, like Christopher, do not discover a problem with the judgment until all of the timelines have run without a remedy. The revestment doctrine as stated in Kading and as interpreted by the majority of appellate case law at least provides parties the opportunity to present their arguments on the merits to a court and let the court decide whether the moving party should be granted relief. You say that he was, if we were to agree with the State's position, he was deprived of an opportunity to have these merits heard. My question, and somewhat facetious, is so what's the problem with that? We have a very highly structured post-conviction act and case law. We understand the use of 214.01 in post-judgment cases. We have a very highly developed jurisprudence about what happens after a case has been finally resolved. So none of those avenues, he did not pursue any of those avenues. So why should he get to hear the merits? Should we get to hear the merits if he did not, in fact, use the procedures that are already in place? Here, he did not know of the problem with his case until all of the timelines had run. He would be in a different position, I think, if the timeline to file a post-conviction petition had not run. Then, yes, he should have availed himself of that procedure. However, the revestment doctrine recognizes that there are occasions in which things happen, like what happened to Christopher, where he doesn't know until well after all of the timelines have run that something happened that he didn't, that something was wrong with the prior judgment that he would have challenged had he known about it in time. And here, the reasons he didn't know was because nobody in that court, when he entered his guilty plea, apparently knew what the law required. And he was left to believe that he did not have to register as a sex offender. And that's a significant factor to consider, considering it was going to require him to do something for 10 years beyond his plea. And had he known, he perhaps would have tried to, rather than entering a blind plea, perhaps he would have tried to negotiate for something different. Perhaps if his attorney had realized that this would be required, his attorney would have tried to negotiate for something different. So the fact that he did not know that he would be required to register leaves the question open as to whether his plea was even knowing and voluntary. And that is something that should be explored. And the revestment doctrine provides an opportunity for that to be explored. Finally, it should be noted that usually the revestment doctrine arises in cases where the motion is filed a day or a week late. The three-year delay in this case and, indeed, the 13-year delay in Bannister are exceptional circumstances. And although it is well within this Court's authority to abandon the revestment doctrine, as the State invites this Court to do, doing so will deprive people who most of the time have missed the deadline by much shorter timelines of their day in court. For all these reasons and those presented in the appellant's briefs, we ask this Court to reverse the appellate court's decision and remand the matter to the trial court for further proceedings in accord with Supreme Court Rule 604D. Thank you. Counsel for the appellant. May it please the Court? Counsel. Could you speak up louder, please? Certainly. Reitha Stotz from the Attorney General's Office for the people of the State of Illinois. I'd like to first touch briefly on some of the factual disputes in the case, and then I'll touch briefly on each of the State's three alternative arguments. I'll go in more depth about the argument regarding the sufficiency of the notice of appeal, and then I'll touch on revestment. Just some of the factual disputes that have come up. I believe defense counsel just argued that defendant wasn't advised of the nature of the charge or the maximum sentence. We disagree, and there's a record citation in footnote 1 of our brief. Defendant was advised of those things.  And we disagree. Defendant hasn't argued that yet in this case. That was not in his motion in the trial court. His motion in the trial court was based on his theory that the sentence was actually too lenient because it was required to specify registration, but it didn't. And regarding defendant's awareness, there's no evidence in the record that defendant was actually unaware. His motion didn't allege and he didn't offer any evidence that he was actually unaware. It's true, as counsel points out, that the judgment didn't specify the registration requirement, but there's no reason to think that his defense counsel didn't actually advise him that that was a direct result of the conviction, whether or not it was specified in the judgment. I'll move to touch briefly on each of the State's three alternative arguments. Our first argument is that the notice of appeal was insufficient because the defendant specified the wrong judgment. If the Court were to reject that argument, only then would the Court need to decide whether the motion was in fact brought under Rule 604 or whether it was some other type of motion. If the Court reaches this point, we'd ask the Court to conclude that it was not a 604 motion. Defendant never invoked 604 in the trial court. He said that for the first time on appeal. And he actually, in the trial court, characterized the motion as collateral, which, of course, wouldn't be the case if it was a 604. So if the Court reaches this point in the analysis, concludes that the motion is not a 604, the Court should vacate the appellate court's judgment and direct that court to affirm the trial court's judgment, because the only argument defendant raised in the appellate court was based on 604, which, of course, doesn't apply if he filed some other type of motion. If the Court were to conclude that the motion had been brought under 604, that would be the only scenario where the Court would be required to address revestment. If the Court reaches that point, we'd ask the Court to affirm on the grounds the appellate court relied on, which is that the notice of appeal was untimely because the 604 motion was untimely and didn't toll, and that the parties didn't revest jurisdiction. That's because the State didn't take any action that was, quote, inconsistent with the merits of the prior judgment. If we get to that point, Ms. Stutz, would it be beneficial for this Court to clarify Flowers and Bannister and how they apply to revestment? Very much so. And even if the Court doesn't get to this point where addressing revestment is necessary, I'd encourage the Court to do it regardless of how it decides the case. The issue has been well addressed by the appellate court, by the parties in this Court, and the lower courts definitely need guidance on this issue. What we'd ask the Court to do is... How do you reconcile it? It can't be reconciled, and that's actually one of the reasons that we're suggesting that the Court consider abolishing the doctrine. The revestment doctrine runs up against the rules governing collateral attacks and allows parties to basically circumvent those rules. And it's inconsistent with the well-established rule that the timelines for post-judgment motions are actually jurisdictional and the rule that jurisdiction can't be waived or conferred by the parties. So in addition to those problems, the doctrine is incompatible with many areas of Illinois law, and the cases in the defendant's brief make clear that for whatever reason the appellate court has had great difficulty applying the doctrine correctly. And not only that, we don't think the doctrine is necessary. I want to get to ask you a question about Bannister. That's a recent opinion, isn't it? Yes. The Justice Fitzgerald authored that opinion? I don't recall. There were dissents. There were. Three people currently on the Court joined into that dissent. Correct. And the one person who wrote the majority opinion is no longer on the Court. As the dissenters in Bannister pointed out, the revestment doctrine runs up against the rule on flowers and the rule about subject matter jurisdiction can't be conferred by the parties. And Bannister was an extreme example of revestment. The Court vacated a conviction 13 years after the fact. In that opinion in Bannister, I thought that it was just a single sentence that discussed revestment and reaffirmed it. Just a single sentence. That's true. So the opinion doesn't explain. It's a post-flowers opinion, which is defendant's point, but it doesn't explain how the revestment doctrine can be reconciled with flowers. So the Court hasn't really addressed that yet, so it's an open to address it however it sees fit. Let me ask you a procedural question that's a little awkward. But certainly we are aware that there have been cases in Illinois in which the State has agreed that the conviction was wrongly obtained and cases have been dismissed. Can you tell me what was the procedural vehicle that the State used in those kinds of cases? In other words, my problem is if in fact we have cases that have gone on for many years and the State now comes to the position that that person was wrongfully convicted, how is that undone if in fact there is not this reinvestment theory? One option is always for the State to support a clemency petition. And depending on the error, it could be brought up post-trial, direct appeal, 21401, post-conviction. If the deadlines for those have run and the State realized the conviction was improper or the sentence was actually above the statutory maximum, the parties or even the State on its own could seek supervisory relief from this Court. From what I understand, those cases don't come up that often. And it's our view that supervisory relief is a sufficient remedy for those cases. And so that's why we think reinvestment isn't necessary. Given all the trouble it's caused, given the way that it's inconsistent with other aspects of Illinois law, our recommendation would be to abolish it, at least in the criminal context. If the Court doesn't want to go that far, we'd ask the Court to consider clarifying it, reiterating the rule in Kading and Bannister, and stressing that there really are two requirements for reinvestment. The parties must participate in action inconsistent with the merits of the judgment, which requires something more than simply defending against a post-judgment motion that's untimely without arguing that it's untimely, which is all the State did here. They have to take action that's inconsistent. And one example is in Kading where both parties moved to vacate the judgment. And they also have to not object based on timeliness. And so we'd encourage the Court to speak on reinvestment, regardless of how it resolves the case. I want to talk a little bit more about our first jurisdictional argument regarding the sufficiency of the notice of appeal. This is how we'd ask the Court to decide this case. This is the threshold question. And our argument's based on this Court's 2008 decision in Smith. This case is on all fours with Smith. In both Smith and this case, defendants plead guilty, are sentenced, and then they wait more than one year before coming back with a motion that alleges the judgment is void. Then they go on to file a notice of appeal that specifies the wrong judgment. In Smith, the notice referenced the judgment of conviction, but defendants' appellate brief challenged the ruling on the motion to void the judgment. Here, the situation is exactly reversed. Defendant's notice referenced only the ruling on the motion to void the judgment, but his appellate brief raised a 604 argument. That's actually a challenge to the underlying judgment, despite what defendant says. Defendant says that a Rule 604 appeal is really just an appeal from an order denying the 604 motion, but that's not correct. Under this Court's decision in Sears, an order denying a post-judgment motion is not itself a judgment. It's not independently appealable. It's reviewable on an appeal from the underlying judgment. But if you want to challenge the denial of a post-judgment motion, your appeal is actually from the original judgment. So defendant needed to specify that judgment, and he didn't. And that brings his case squarely within Smith. The only difference is that the two orders are reversed. So what the Court – this Court said in Smith was that specifying the wrong judgment is more than a mere defect in form. Even in that case where the defendant was pro se and even where the State doesn't argue prejudice. So our position is that this case falls squarely within the Smith rule, and so we'd ask the Court to affirm the appellate court's judgment, dismissing for lack of jurisdiction but for a different reason. And however this Court decides the case, we'd encourage the Court to speak on revestment. Kennedy, on back to Bannister, in that regard, I wrote the dissent in Bannister joined by two others who are currently on the Court. Where did I go wrong in that dissent? Have you analyzed the dissent as well as the jury? I have. And if I recall, the dissent made the point that the revestment – the application of revestment in that case was inconsistent with Flowers, and I – that – and we agree with that. Well, Flowers just cast doubt on the validity of the reinvestment. Okay. Thank you. Thank you. Thank you, Counsel. Ervado. I'll speak briefly on the notice of appeal issue. This argument the State is raising is, as far as I can recall, the same argument that was raised in Tyron Patrick, which is that the notice – the date on the notice of appeal, which was the date of the last judgment had in the trial court, was not sufficient to let the State know what was being appealed. I believe this Court's holding in Patrick was that that date was sufficient to give the State notice that the defendant was appealing from the judgment below and reaffirmed case law that says that the notice of appeal serves to put the State on notice that the defendant is appealing, and it is, in fact, the items briefed in the brief, which are the issues on appeal. I'd point out that, as in Patrick, here the State has fully briefed the issue raised on appeal, regardless of the date that was on the notice of appeal, thus the State has not proven or shown in any way, shape, or form that it was prejudiced by a lack of knowledge of what the exact nature of the appeal might be. Turning to the State's arguments about their concerns about the facts that I presented earlier, the defendant was not advised of the nature of the offense and the maximum and minimum penalties at the time of the plea in the State's brief. The record citations it gives are to the arraignment. As this Court is aware, Supreme Court Rule 402 requires the defendant to be admonished of these things at the time of the plea, not merely at the time of the arraignment. The defendant, I have not argued the voluntariness of the plea in this appeal because without compliance with Supreme Court Rule 604D, we can't reach that issue yet. I raised it here simply as a response to a question I believe I received from Justice Tice. The State also alleges that there's no evidence that the defendant did not know that he had to register as a sex offender, except that the Court told him he didn't have to. To assert that a 17-year-old who was told by the Court that he didn't have to register as a sex offender might have somehow known that he had to, despite the fact that he had just been told by a judge that he didn't have to, is preposterous. One of the issues the State argues as to why the revestment doctrine should be abandoned is because it runs up against the rules we have. This is true of every exception to a rule. That's what they are. They're exceptions. They're not going to always agree with the rules because they're meant to not agree with the rules. The State's suggestion that it would be okay to abandon the revestment doctrine because supervisory relief and clemency are still available, yes, they're still available. However, they're extraordinary measures. And it provides one more rock in the way to the courthouse door for people like the defendants, like inmates who are found years later through DNA, to be innocent, to get their convictions overturned. I can't say that I know how those cases are panning out, what procedural grounds are being cited in the trial courts. I've not yet seen a record for one or a decision on one. However, I hazard to guess that it's the revestment doctrine that is getting those people into court. Now, turning to Flowers. We don't know, perhaps this Court knows, but I don't know whether or not revestment was even argued in Flowers. Because revestment was not addressed by the Court directly, I don't know whether it was briefed, whether the parties even tried that venue. However, what I do know is that the majority decision in Flowers, which has caused all the language that has caused all the problems with whether or not Flowers abrogates revestment, cites the two cases, People v. Williams and Tolman v. Park Castle Apartment Building Corp., which both predate Kading. So without addressing Kading, which should have been the current precedent, the Court looked to older language and decided it on those grounds. And that may be simply because revestment wasn't raised, so nobody thought to look at Kading. But I think that's at least worth looking at as to why Flowers is so problematic for the revestment doctrine. Asking that this Court abolish the revestment doctrine is asking this Court to say that a 17-year-old who enters a blind guilty plea to having sex with his 16-year-old girlfriend and is never told he has to register as a sex offender and finds out three years later that he does, that he has no remedy under the law. And the facts of this case, especially in the absence of proper oral appeal admonishments, are the reason the revestment doctrine is so important. If there's no further questions, I ask this Court to reverse and remand. Thank you. Case number 115459, People v. Christopher Bailey, will be taken under advisement as agenda number four. Counsel, Ms. Montgomery, Ms. Sass, you're excused at this time. Thank you for your time.